Turner, J.
 

 First to be disposed of will'be two questions raised
 
 su,a sponte,
 
 to wit: (1) Is the commission’s order a final order? (2) Is appellant aggrieved by the order appealed from?
 

 As defined in Section 12223-2, General Code, an order affecting a substantial right made in "a special proceeding is a final order.
 

 In the case of
 
 Ohio Contract Carriers Assn., Inc.,
 
 v.
 
 Public Utilities Commission,
 
 140 Ohio St., 160, 42 N. E. (2d), 758, it was held:
 

 “Appeal lies only on behalf of a party aggrieved by the final order appealed from. Appeals are not allowed for the purpose of settling abstract questions, but only to correct errors injuriously affecting the appellant. ’ ’
 

 The majority of the court is of the opinion that the commission’s order does affect a substantial right of the appellant and that appellant is aggrieved thereby for the reason that the relief sought by appellant was not granted. The commission’s finding in such order was “that the proposed publication of joint rates or routings to the extent as herein set forth are not prejudicial to the rights of the protestant nor a violation of the imposed restrictions # #
 

 
 *358
 
 It is true that rule 18 complained of was ordered cancelled but such order was ‘ ‘ without prejudice to the filing of routing instructions, in accordance with the rules and regulations of this commission in connection with joint fares, upon statutory notice, and to provide joint fares in routing, in connection with Atlantic Greyhound Corporation, as set forth in the finding herein. ’ ’
 

 Besides, the commission in its finding went to the very heart of the controversy raised by appellant's complaint when it found:
 

 “We further find that the restrictions imposed upon certificate No. 1750 do not prohibit the transportation of passengers between Chillicothe and Columbus by Atlantic (1) when originating at either of these points, and travelling upon a joint through ticket providing for a joint through transportation in connection with another carrier when the destination of such passenger is a point beyond either Columbus or Chillicothe, or (2) when destined to either Columbus or Chillicothe and travelling upon a joint through ticket from a point beyond either Columbus or Chillicothe upon the route of a connecting carrier * *
 

 It was in view of the. foregoing finding that the commission held that its order should be “without prejudice to the filing of routing instructions, in accordance with the rules and regulations of this commission in connection with joint fares, upon statutory notice, and to provide joint fares in routing, in connection with Atlantic Greyhound Corporation, as set forth in the findings herein.”
 

 If the appeal herein be dismissed, appellant would doubtless be met, in a proceeding questioning the new schedule, with the claim that the merits of this controversy’ had been settled.
 

 We proceed then to the merits of the appeal.
 

 
 *359
 
 Appellant states as its major premise:
 

 “The basis of this action is an attempted regulation of joint routes for intrastate motor carriers operating in Ohio, under separate certificates with fixed termini as required by Motor Transportation Act. No mention of joint routes is found in such Motor Transportation Act.”
 

 Appellant’s attack is directed particularly to parts of rules 9, 18 and 20 of the commission’s administrative order No. 124. These parts are as follows:
 

 In rule 9: “The term ‘joint rate’ or ‘joint fare’ shall mean a rate or fare applicable over the lines of two or more carriers. * * *
 

 “The term ‘joint tariff’ shall mean a tariff containing joint rates or fares.
 

 “Joint tariffs shall contain the names of all participating carriers, together with the numbers of certificates covering their operations and the numbers of concurrence or power of attorney.”
 

 In rule 18: “Passenger tariffs will be of four classes.
 

 “ (a) Joint- tariffs, applying to traffic between points on the lines of two or more carriers.”
 

 Rule 20 (e) will be set out later in this opinion.
 

 However, as presented to the commission, appellant relied principally upon the conditions contained in Atlantic’s certificate of public convenience and necessity. It is the claim of appellant that, by virtue of the conditions contained in Atlantic’s certificate, Atlantic may not haul intrastate passengers originating beyond Columbus to Circleville or Chillicothe; neither may Atlantic haul passengers from Chillicothe or Circleville who are destined to intrastate points beyond Columbus. Appellant’s position is stated in the record in the following language of its treasurer and assistant secretary:
 

 “In the past we have rights to haul local passengers
 
 *360
 
 and wo have always maintained that we have rights to any passengers originating at Chillieothe travellingintrastate to points beyond Columbus, and that in interstate commerce, of course those passengers have the right to ride either line which they prefer, and the same thing applies to passengers originating- north of Columbus. We maintain that any passenger originating intrastate going through Columbus to Chillieothe and terminating at Chillieothe is our passenger.”
 

 The position of Atlantic is stated by its vice-president in charge of tariffs in a letter to C. J. Randall, secretary Ohio Motor Bus Association (introduced •in evidence’below as exhibit “A”):
 

 “Our certificate carries a restriction against the handling of passengers whose origin is within the city limits of Columbus, and whose destination is within the city limits of Chillieothe, or whose origin is within the city limits of Chillieothe and whose destination is within the city limits of Columbus.
 

 “The above is the only restriction on our franchise, and I would, therefore, appreciate your putting in section 'A’ an optional routing privilege, authorizing Atlantic Greyhound in all routes reading between Columbus and Chillieothe, with the exception of Columbus-Chillicothe itself. ’ ’
 

 . There is no direct evidence in the record to the effect that Atlantic has been selling- tickets or transporting passengers from Chillieothe to Columbus whose destinations are points beyond Columbus. However, as we read appellant’s exhibit No. 1, which is the tariff in question, rule 18 applies between Columbus and Chillieothe in either direction except that it does not apply locally between Columbus and Chillieothe.
 

 The position of appellant is summarized and commented on in the following language of the commission’s order:
 

 
 *361
 
 “It is claimed by protestan! [appellant] that Atlantic is prohibited by the imposed restriction, as an example, from handling a passenger originating at Chillicothe who is traveling on a joint ticket to Akrpn when transferred to another carrier at Columbus. Such a passenger’s destination is not Columbus but Akron. The same holds true of a passengér who travels on a joint ticket from a point north of Columbus over the route of any carrier and transfers to either the protestant’s [appellant’s] line or the line of the respondent [Atlantic] at Columbus, whose destination is Chillicothe. Such passenger is not ‘at or from’ Columbus, and his origin is not Columbus.”
 

 Appellant has assigned eleven grounds of claimed error all of which may be decided under two heads, to wit: (1) Are the parts of the commission’s administrative order No. 124, objected to by appellant, unlawful or unreasonable? (2) Assuming that administra-, tive order No. 124 is lawful and reasonable, will rule 18 of the passenger tariff issued by C. J. Randall as agent of Ohio Motor Bus Association, when reformed in accordance with the order of the commission, conflict with the restrictions contained in the certificate of public convenience and necessity issued to Atlantic’s predecessor?
 

 Rule -20 (e) of the commission’s administrative order No. 124 provides:
 

 “Routing under the tariff. If the fares apply via more than one route or gateway, the route or gateway shall be shown in connection with the fare, or the different route shall be specified and each route be given a number, in which event the routing to each point of destination named in the tariff will be shown by placing opposite thereto, in a column headed ‘route’ the proper number or numbers.”
 

 In the course of the commission^ order it is stated:
 
 *362
 
 “It is tlie common practice of all common regular route carriers to establish joint rates and joint routes.”
 

 In the preliminary statement in its brief filed in this court appellant says:
 

 “At the time of the adoption of such Motor Transportation Act in 1923, and ever since, no provision was made as to tickets. Each company, or individual, made his or its own arrangement-as to tickets. Originally, these tickets were good only on the route of the issuer. This was entirely in accord with the provisions of the Motor Transportation Act. Increase of business and passengers, multiplication of certificated routes, desire of motor operators to accommodate the public produced the use of coupon tickets good for ride on route of issuing company and over the lines of other companies which connect with or cross the route of the issuing company. This arrangement is based entirely upon agreement by the companies participating. To travel by joint or coupon tickets does not create a necessity for joint routes.”
 

 We must keep in mind that we are here dealing only with joint rates. The Motor Transportation Act, Section 614-84
 
 et seq.,
 
 General Code, specifically authorizes motor transportation companies to- establish joint rates and specifically authorizes the commission to adopt rules and regulations governing such schedules of joint rates.
 

 Section 614-16, General Code, provides:
 

 “Every public utility shall print and file with the commission, within ninety days after this act takes effect, schedules, showing all rates,
 
 joint rates,
 
 rentals, tolls, classifications and charges for service of each and every kind by it rendered or furnished, which were in effect at the time this act takes effect and the length of time the same has been in force, and all rules and regulations in any manner affecting the same.
 
 *363
 
 Such schedules shall be plainly printed and kept open to public inspection. The commission shall have power to prescribe the form of every such schedule, and may, from time to time, prescribe, by order, changes in the form thereof. The commission may establish rules and regulations for keeping such schedule open to public inspection, and may, from time to time, modify the same. A copy of such schedules or so much thereof as the commission shall deem necessary for the use and information of the public, shall be printed in plain type and kept on file or posted in such places and in such manner as the commission may order. ’*• (Italics ours.)
 

 The foregoing section is made applicable to motor transportation companies by Sections 614-89 and 614-93a, General Code.
 

 Section 614-92a, General Code, provides in part:
 

 “Where joint rates have been established by regular route motor transportation companies, and also where regular routes of any motor transportation company connect with each other, any such company, notwithstanding any other provision of this chapter, may use and operate, on its own regular route or regular routes # * * motor vehicles for the transportation of persons, of itself and of any other such company for the movement of traffic, without transfer, between any points on the regular route or routes of such companies, in accordance with the restrictions of the respective certificates of each such company. The commission may prescribe reasonable rules and regulations governing such through operation, interchange * * *
 

 Section 614-93a, General Code, provides:
 

 “After a certificate of public convenience and necessity has been granted to a motor transportation company, and time, service, and rate schedules have been
 
 *364
 
 filed with the Public Utilities Commission in accordance with law and the rules and regulations of the commission, such rate schedules, including schedules of
 
 joint rates,
 
 and any changes therein, shall be governed by the laws of Ohio applicable to such schedules by railroads * * V’ (Italics ours.)
 

 Section 614-86, General Code, provides in part:
 

 “The Public Utilities Commission of the state of Ohio is hereby vested with power and authority to supervise and regulate each such motor transportation company in this state; to fix, alter and regulate rates; •* * * and to supervise and regulate motor transportation companies in all other matters affecting the relationship between such companies and the public to the exclusion of all local authorities in this state, except as'hereinafter otherwise provided. The commission, in the exercise of the jurisdiction conferred upon it by this chapter, shall have the power and authority to prescribe rules and regulations affecting such motor transportation companies * *
 

 Section 614-27, General Code, provides:
 

 “Whenever the commission shall be of the opinion, after hearing had upon complaint, as in this act provided, or upon its own initiative or complaint, served as in this act provided, that the rules, regulations, measurements or practices of any public utility with respect to its public service are unjust or unreasonable, * * * it shall determine the regulations, practices and service thereafter to be installed, observed, used and rendered, and fix and prescribe the same by order to be served upon the public utility. * *•*”
 

 Section 614-92, General Code, cited by appellant, provides in part:
 

 “Except as otherwise expressly provided,
 
 it shall be unlawful for any motor transportation company as defined in this act to operate in this state on any route,
 
 *365
 
 other than the route provided for in the certificate granted by the commission * * (Italics ours.)
 

 The record in this case discloses no violation of the. foregoing section and, therefore, it is not necessary for us to discuss the provisions of Section 614-92a;. General Code.
 

 After citing the case of
 
 Minerva-Canton Transit Co.
 
 v.
 
 Public Utilities
 
 Commission, 118 Ohio St., 561, 162 N. E., 34, which involved the violation of rules adopted by the commission, and in which Judge Matthias said (page 563): “Broad powers are conferred upon the commission by the Motor Transportation Act (Section 614-84
 
 et seq.,
 
 General Code), in order that the public convenience and necessity may be met by adequate transportation facilities. Like power and authority have been conferred upon the commission to supervise and regulate the service and require and enforce conformance to the law, and to its own rules prescribed under authority of law, for the purpose of protecting and safe-guarding the interests of the public,” appellant in its brief in this court says: “It is apparent, from the foregoing, that broad powers are essential in the commission for specific purposes, to wit, that the public may have adequate transportation facilities and for the purpose of protecting and safeguarding the interest of the public.”
 

 We are of the opinion that the portions of the commission’s administrative order No. 124 complained of by appellant are neither unlawful nor unreasonable.
 

 We are of the further opinion that it is neither unlawful nor> unreasonable for the commission to approve a joint rate whereby a motor transportation company may sell a through ticket for passenger transportation over its own line to a destination on the line of another motor transportation company.
 

 It remains to be determined whether rule 18 of the
 
 *366
 
 joint tariff infringes upon the rights of appellant or is contrary to the conditions contained in Atlantic’s certificate of public convenience and necessity.
 

 In its order in this case the commission stated:
 

 “It is claimed by the protestant that to permit routing between Chillicothe and Columbus over the line of Atlantic will cause losses in revenue to them, making-necessary the elimination of at least part of their service. From the testimony offered, which was vague and uncertain, we are not convinced that any loss of revenue would occur. The protestants have not shown that any loss of passengers may occur that would seriously jeopardize its continued operation.”
 

 There is nothing in the record to justify a modification of this finding.
 

 We have studied carefully appellant’s argument as to the meaning- of the words “destination” and “at or from” contained in the restrictions of Atlantic’s certificate, but are unable to arrive at a meaning different from that adopted by the commission in 'its order. In its order the commission stated:
 

 “It is claimed by protestant that Atlantic is prohibited by the imposed restriction, as an example, from handling- a passenger originating at Chillicothe who is traveling- on a joint ticket to Akron when transferred to another carrier at Columbus. Such a passenger’s destination is not Columbus but Akron. The same holds true of a passenger who travels on a joint ticket from a point north of Columbus over the route of any carrier and transfers to either the protestante line or the line of the respondent at Columbus, whose destination is Chillicothe. Such passenger is not. ‘at or from’ Columbus, and his origin is not Columbus.”
 

 We agree with the following- finding- of the commission in this proceeding:
 

 “We further find that the restrictions imposed upon
 
 *367
 
 certificate No. 1750 do not prohibit the transportation of passengers between Chillicothe and Columbus by Atlantic (1) when originating at either of these points, and travelling upon a joint through ticket providing for a joint through transportation in connection with another carrier when the destination of such passenger is a point beyond either Columbus or Chillicothe, or (2) when destined to either Columbus or Chillicothe and travelling upon a joint through ticket from a point beyond either Columbus or Chillicothe upon the route of a connecting carrier * * *.”
 

 Such being our opinion we see no necessity for discussing the procedure to be followed in the amendment of a certificate of public convenience and necessity.
 

 Being of the opinion that the order of the commission appealed from herein is neither unlawful nor unreasonable, such order is hereby affirmed.
 

 Order
 
 affirmed.
 

 Weygandt, C. J., Zimmerman, Williams, Matthias and Hart, JJ., concur.