CHICAGO, ROCK ISLAND & PACIFIC
RAILROAD COMPANY, a corporation,
Appellant,

v.

The STATE of Oklahoma, The Corporation
Commission of the State of Oklahoma, and
the City of Hobart, Oklahoma, Appellees.

No. 36278.

Supreme Court of Oklahoma.
March 15, 1955.

J. I. Gibson, Savage, Gibson, Benefield & Shelton, Oklahoma City, for appellant.

Percy Hughes, Hobart, for City of Hobart.

James G. Welch, General Counsel, T. Earl Curb, Asst. General Counsel, Oklahoma City, for Corporation Commission.

HALLEY, Justice.

This is an appeal by the Chicago, Rock Island and Pacific Railroad Company from an order of the Corporation Commission denying the application of the Rock Island to reduce its tri-weekly freight or mixed train service to bi-weekly service on its Chickasha to Mangum, Oklahoma, branch

line. The trains proposed to be discontinued are Nos. 705 and 706, which render a mixed train service, but since 1945, the only passenger service offered was freight train caboose service.

Under General Order No. 23211 of the Corporation Commission, it is provided that no railroad company, which is supervised and regulated by the Oklahoma Corporation Commission, shall discontinue any passenger train service until authorized to do so by the Corporation Commission. However, the protest against reducing freight service makes no mention of any intention or effort to reduce or abandon passenger service, and we deem it necessary to discuss the order appealed from only as it would reduce freight service.

A hearing was had before the Corporation Commission and witnesses testified for both sides. An order was entered September 2, 1953, forbidding the Rock Island to curtail its freight service. The Rock Island has appealed and relies upon two propositions for reversal of the Commission's order. They are as follows:

"That Order No. 27481 is not in compliance with the Statutes and the Constitution of the State of Oklahoma, as there are no Findings of Fact, Conclusions of Law, or reasons in support of said Order made, the same being indefinite, uncertain, vague, and too general in its terms and provisions, not permitting a reasonable interpretation thereof."

"There is no substantial competent evidence that public necessity or convenience require tri-weekly freight service. Rock Island should be authorized by this Court to substitute bi-weekly freight service on its Anadarko-Mangum Branch Line."

■ The Order appealed from was entered September 2, 1953, but no Statement of Facts or Conclusions of Law, or reasons in support of the Order, were prepared until June 8, 1954. Article 9, Section 22 of the Oklahoma Constitution requires the Commission to file with the record of the Order appealed from to the Supreme Court a written statement of the reasons upon which its Order is based, and to certify to this Court all of the facts upon which the action appealed from was based. The Commission failed to meet this requirement.

However, on June 8, 1954, the Commission offered to file such report and the Rock Island made no objection to such delayed filing. It was filed July 16, 1954. The Rock Island did state that it would challenge the validity and sufficiency of the report in its reply brief. We think these admissions dispose of appellants first proposition, because the delayed report was filed and became a part of the record before us.

The second proposition asserts that there is no competent evidence that public necessity or convenience require tri-weekly freight service, and that the Rock Island should be authorized to substitute bi-weekly freight service on its branch line involved.

It should be kept in mind that the Rock Island is not seeking to completely abandon its positive duty to render freight service in the area in question, but proposes to render a lesser substituted service. The real question is whether the proposed lesser service is adequate to meet the necessity and convenience of the affected public.

The present service being rendered means that a train reaches each station each week day. This means that a locomotive is available to switch cars on tracks connecting the Rock Island with other lines that cross it, for spotting cars for loading or unloading, and for bringing in and taking out incoming and outgoing freight.

The Rock Island introduced evidence showing that the present tri-weekly service costs, and will continue to cost, $72,542.60, annually more than the proposed bi-weekly service. It contends that it is unreasonable to require its stockholders and the shipping public as a whole, to pay out such a sum annually to eliminate the inconveniences that such lesser service would impose upon the communities involved.

Certain general rules governing appeals of this character have been announced by

this Court in previous decisions. In the case of Kurn v. State, 175 Okl. 379, 52 P.2d 841, it was said in the second paragraph of the syllabus:

"In the performance of an absolute duty by the railway company, the question of expense is not to be considered, but, where the duty sought to be enforced is one of additional convenience rather than necessity, the question of expense to the company and relative benefit to the public is the deciding factor and may not be disregarded."

In Pannell v. Farmers Union Cooperative Gin Association of Sterling, 192 Okl. 652, 138 P.2d 817, decided in 1943, it was announced in the second paragraph of the syllabus:

"Under Art. IX, sec. 20, constitution of Oklahoma, as amended by Senate Bill 61, S.L.1941, p. 544, on appeal from the corporation commission this court is required to review the evidence, and must sustain the order appealed from if it is supported by substantial evidence."

In the body of the opinion it is stated in regard to the words "substantial evidence":

"It is our opinion that the determination of whether there is substantial evidence to establish or support an order made by the commission does not require that the evidence introduced by all of the parties be weighed but only that that evidence in the record tending to support the order entered be considered to determine whether it meets the test stated above. In other words, we are to determine whether the evidence introduced by the Association implies such clarity as proof that it did induce the conviction that the application should be granted, or furnished a substantial basis of fact from which the issue tendered could be reasonably resolved."

In Yellow Transit Co. v. State, 198 Okl. 229, 178 P.2d 83, it is announced in the first paragraph of the syllabus:

"Under Art. IX, sec. 20, Constitution of Oklahoma, as amended by Senate Bill 61, S.L.1941, p. 544, on appeal from the Corporation Commission, this court is required to review the evidence, and must sustain the order appealed from if it is supported by substantial evidence."

In Missouri-Kansas-Texas R. Co. v. State, 189 Okl. 685, 119 P.2d 835, the general rule is announced in the first and third paragraphs of the syllabus as follows:

"In a proceeding before the corporation commission where a railroad company seeks permission to discontinue certain trains on a given line of road, which trains are wholly in excess of adequate and reasonable facilities necessary to the performance of its absolute duty in the particular instance, the maintenance and operation of such trains constitutes an additional convenience rather than public necessity, and the question of expense to the company in the operation thereof and relative benefit to the public is the deciding factor.

"In determining the financial loss of a common carrier resulting from the performance of an additional service as distinguished from an absolute duty, the inquiry is limited to the revenue and expense arising from the particular service and does not extend to the entire system."

We have carefully examined all of the evidence produced by the Rock Island and the appellees. The saving to the Rock Island by the proposed lesser freight service is substantial. It is admitted that during the rush seasons, on such commodities as wheat and cotton, the Rock Island has voluntarily provided extra or additional service to the full satisfaction of the shippers who testified. The Corporation Commission made Findings of Fact and Nos. 4 and 5 are as follows:

"(4) That the operation of Trains Nos. 705 and 706 affords both passenger and freight service to the public as well as the required switching

service to the shipping public along the line."

"(5) That the continued operation of Trains Nos. 705 and 706 on the present schedule is a public convenience and necessity."

There is evidence that Trains Nos. 705 and 706 afford both passenger and freight service, as well as switching service to the shipping public, even though the passenger service is merely caboose service and there is no evidence that any passenger used such service. The more serious question as to the Commission's findings is whether the continued operation of Trains Nos. 705 and 706 on the present schedules is a "public convenience and necessity," which justifies the cost involved.

The evidence includes an official time card or schedule by which Trains Nos. 705 and 706 are designated "mixed trains", and witnesses testified that a "mixed train" carries passengers, freight, express and baggage. The testimony on this point is sufficient to support the Commission's findings that the trains mentioned afford both passenger and freight service.

Among the witnesses testifying for appellees was the manager of the Farmers Cooperative Association which serves more than 1600 farm families; the Superintendent of a large cotton compress company; the operator of a large feed mill which manufactures and sells commercial feed; the manager of a scrap iron business; the manager of a frozen food locker plant; the manager of a canna bulb farm which grows and ships large quantities of canna bulbs; and, also the manager of a concern that collects and distributes fresh meats and vegetables. These witnesses all testified that in their opinion the present tri-weekly freight service was necessary for their various businesses and for the community. The necessity claimed was based largely upon the service of one train each day for the spotting cars on sidings and industry tracks; inadequate industrial storage facilities along the Rock Island line; the avoidance of loss by fluctuating market prices of cotton and scrap iron; the necessity for quick shipment of canna bulbs and cotton headed for export markets and to avoid the delay in shipping cars arriving on the Rock Island line by way of connecting roads.

It appears to us that under the service being rendered at present by the Rock Island, the service of spotting cars on shippers' sidings and switching cars from other railroad lines to locations on other lines are all rendered by the train crews of Nos. 705 and 706 on each week day. These are the two trains proposed to be discontinued by the Rock Island.

Under the ruling of this Court in the Yellow Transit Co. and Pannell cases, supra, it is the duty of this Court to affirm an order of the Corporation Commission where it is supported by substantial competent evidence. A careful review of the evidence convinces us that there is ample substantial evidence to sustain the Order of the Commission, that the present tri-weekly freight service is a public necessity, and its order is therefore affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, DAVISON, BLACKBIRD and JACKSON, JJ., concur.