MISTLETOE EXPRESS SERVICE,
Plaintiff in Error,

v.

CORPORATION COMMISSION OF the STATE OF OKLAHOMA, The State of Oklahoma, and Magic Empire Express, Defendants in Error.

No. 37397.

Supreme Court of Oklahoma.

June 25, 1957.

Rehearing Denied Sept. 10, 1957.

Application for Leave to File Second Petition for Rehearing Denied Oct. 29, 1957.

Rainey, Flynn & Anderson, Looney, Watts, Looney, Hamill & Nichols, Oklahoma City, for plaintiff in error.

Lybrand & Morgan, Oklahoma City, for petitioners in error, Joe Hodges Transp. Co., Inc., and Mid-Continent Freight Lines, Inc.

James G. Welch, Gen. Counsel, Corporation Commission of Oklahoma, Oklahoma City, Byron V. Boone, James O. Ellison, Tulsa, Margaret Behringer, George F. Short, Oklahoma City, for defendants in error.

BLACKBIRD, Justice.

This is an appeal from Order No. 31939, entered by this State's Corporation Commission on March 20, 1956, issuing to the Magic Empire Express of Tulsa, Oklahoma, Certificate No. A–812 authorizing it to operate a class "A" Interstate and Intrastate Motor Carrier Service between certain cities and towns and over certain roads and/or highway routes specified therein. This certificate in effect supersedes said Carrier's previous certificate No. A–23 and merges the territory already served under it with certain new territory.

Under the old certificate, as amended, the carrier hereafter referred to merely as Magic, was, at the time it applied for the new certificate, serving a territory comprising approximately the northeastern quarter of Oklahoma surrounding its headquarters at Tulsa, Oklahoma, and extending, in some instances, a distance of more than 100 miles from that City. For example, it has been carrying express up U. S. Highway No. 66 to Picher, near the Kansas line on the northeast, to Coweta, Hulbert, Westville and Sallisaw on the east and southeast, and as far south of Tulsa as Holdenville, Sasakwa, and as far west and northwest of Tulsa as Kaw, Ralston and Stillwater. Between these points and Tulsa, it serves such towns and cities as Wewoka, Seminole, Shawnee, Chandler, Stroud, Depew, Bristow, Cushing, Stillwater, Pawnee, Pawhuska, Drumright, Sapulpa, Dewey, Nowata, Chelsea, Claremore, Broken Arrow, Okemah, Henryetta, Eufaula, Checotah, Stigler, Warner, Gore, Vian, Vinita, Afton and Miami. On their regularly scheduled "main line" trips, Magic's trucks have always traveled from its terminal in Tulsa to and through such towns and cities and back to the Tulsa terminal. They have never traveled any closer to Oklahoma City than Perkins on the north, and Chandler, Meeker and Shawnee on the northeast, east and southeast of said City.

Another express company, hereinafter referred to as Mistletoe, with headquarters in Oklahoma City, has furnished the same type of express service to towns and cities situated south and west of Oklahoma City. In addition, it serves the towns and cities along U. S. Highway No. 270 southeast to Wilburton and towns and cities along U. S. Highway No. 62 to Muskogee. Out of Muskogee, Mistletoe's route coincides with one of Magic's to Wagoner and on northeast to Westville and south to Stillwell. Mistletoe also serves towns southeast of Muskogee, such as Sallisaw and Stigler. Mistletoe also operates non-stop express schedules between Oklahoma City and Tulsa on the Turner Turnpike.

Theoretically, when either Magic or Mistletoe has picked up, or accepted, at any of the towns or cities it serves, express consigned to a town served exclusively by the other company, it could carry said express to a point where it "interlines" with a regularly scheduled line of the other carrier, and transfer it to that other carrier. When the latter delivers the express and collects the shipping charge, then it is supposed to remit a proportionate part of said collection to the other carrier, depending upon what portion of the express' entire journey the original carrier carried it. Under this plan, express consigned to Stroud and carried by Mistletoe on a schedule it has from Oklahoma City to Chandler, may be turned to Magic at Chandler for the completion of its journey to Stroud, which latter town Magic serves, but Mistletoe does not. Similarly, express Magic picks up at one of the towns or cities it serves, that is consigned to a town or city, such as Oklahoma City, served exclusively by Mistletoe,

may be "interlined" with Mistletoe either at Tulsa or Chandler, or at certain other points where the lines of the two meet, or intersect.

Since 1939, under a policy adopted by both Magic and Mistletoe, where shipment is to be dispatched in a town or city they both serve, to a city or town served by only one of them, it is referred to the latter for the entire trip. In other words, since Mistletoe has had regular schedules between Oklahoma City and Tulsa, Magic, theoretically has turned all Tulsa express consigned to Oklahoma City over to Mistletoe for hauling. Under these carriers' past practice, if one of Magic's agents picked up the consignment at Tulsa, and it was transported to Chandler on a Magic truck and "interlined" there with Mistletoe, the latter would cancel or "void" Magic's bill of lading, transport the express from Chandler to Oklahoma City under a new bill of lading of its own, and collect the total shipping charge for the entire journey without remitting any part of it to Magic, for the portion of the trip Magic carried it. Until recently the same policy worked to Mistletoe's detriment on a shipment originating, for instance, at Shawnee (which city both carriers served) and consigned to Miami, which only Magic served.

A few months prior to Magic's filing of the application involved herein, however, Mistletoe applied for, and was granted, authority under its Class "A" certificate to extend its service from Tulsa along U. S. Highway No. 66 to Miami, serving the principal towns and cities along this highway between those two points. This route, of course, parallels or coincides, as far as Miami, with the route, already traversed and served by Magic, to that city and Picher, Oklahoma. Thus, since this extension was granted, Mistletoe, under the aforedescribed policy, has been collecting the entire revenue for all shipments originating at the points it serves along U. S. Highway No. 66, and consigned to Oklahoma City and other towns and cities it serves exclusively in the central and southwestern parts of the State.

The foregoing indicates some of the factors in the competitive situation existing between the express carriers involved herein as principals, when Magic, by the application to the Commission here involved, sought, among other things, to extend its lines to Oklahoma City where it can participate in the revenue now being earned by Mistletoe on shipments between that large distribution center and the northeastern part of the State, that until recently was a part of Magic's exclusive territory. In consideration of the justification in "public convenience and necessity" required for extending its authority, Magic introduced, in support of its application, evidence contemplated to show that such an extension was not only needed to give that portion of the public it has been serving, better service to and from Oklahoma City, but also to furnish points which now have no such service, express shipping service to and from Oklahoma City. The application was opposed not only by Mistletoe but also by Railway Express, Inc., and several bus and freight lines, of whom The Santa Fe Trail Transportation Company, Joe Hodges Transportation Co., Inc., and Mid-Continent Freight Lines, Inc., have joined Mistletoe's present appeal from the Commission's Order.

In its original brief, Mistletoe contends in its Proposition 1, that the findings and order of the Commission "are not sustained by the law or by any substantial evidence." To support this, it singles out certain towns, hereinbefore mentioned, that are already being served by Magic under its old certificate, and asserts that the record in this case is devoid of any evidence *even tending* to justify additional express service between them and Oklahoma City. We will assume that, of the witnesses who testified on behalf of Magic, the testimony of John A. Zoller, circulation manager for Newspaper Printing Corporation, the circulation agent for the Tulsa World and Tulsa Tribune newspapers, and Otis V. Allen, of the Allen Ice Cream Company was the only evidence in the case even contemplated to show any need for additional express service for ship-

ments originating in Oklahoma City or Tulsa and consigned to any point located between those cities on U. S. Highway No. 66, with the exception of Davenport. As we view it, however, that consideration is not the only one involved. Other considerations pertain to the public need for express service between other points in that part of the State we refer to as "Magic's territory" and Oklahoma City, and between said City and points not now served by either Magic or Mistletoe.

As to Davenport, which is only 56 miles from Oklahoma City via U. S. Highway No. 66, the evidence is undisputed that neither of these two carriers at present maintain any service directly between it and Oklahoma City; and that to be transported from Oklahoma City to Davenport, express must first be carried from said City to Tulsa by Mistletoe, and be interlined there for transportation from Tulsa back to Davenport. On any of the present schedules now maintained by these carriers, the route such express takes totals 182 miles, instead of 56, and consumes more than 12 hours. Mr. L. A. Guest, President of the Davenport Chamber of Commerce and the Central Oklahoma Telephone Company, testified that pursuant to a resolution of said Chamber, a letter was written to Mistletoe as long ago as 1940, in an effort to get improved service to said town, but, as far as anyone there knows, no reply to that letter was ever received. Mr. Guest further testified that his Company buys telephone supplies from an electric company in Oklahoma City, that it is unable to maintain a large inventory of such supplies and consequently must order many small items on short notice. Mr. Guest's testimony further showed that in case of emergency, he must send a truck to Oklahoma City to get the parts or supplies he needs. Mr. Guest further testified that in the past he has been able in some instances to procure the shipment of materials from Kansas City quicker than they could be transported from Oklahoma City. This witness also went into detail in showing that service to Davenport from Oklahoma City by the freight lines, Santa Fe and Lee Way, have not been satisfactory in the past. His testimony also showed that to get supplies from Shawnee to Davenport, they must first go to Oklahoma City, then to Tulsa and back to Davenport, a journey of 221 miles, when it is only 34 miles by direct highway route from Shawnee to Davenport.

We consider it unnecessary to fully describe the evidence showing the public necessity and convenience of establishing express service between Oklahoma City, Poteau, Welch and Keota, which neither Magic nor Mistletoe now furnish, and of establishing better service between Oklahoma City and Arcadia, Luther, Davenport, Wynona, and Ponca City, and from all of those points to other points now served by either Magic or Mistletoe, or both. The fact that accomplishing this by the extension of Magic's service authorized by the order appealed from, may in some instances give additional service, or constitute duplicated service, between certain intermediate points, for which no present need was shown, is not controlling in the matter. It would seem reasonable that if Magic is to be permitted to maintain the service it is now furnishing many points in northeastern Oklahoma that are so-called "inland" towns, or are not otherwise served, it will be in a better position to continue that service and improve it if it is allowed to share in the revenue on the longer hauls from that part of the State to Oklahoma City. Placing both carriers on a more or less equal basis as to such longer hauls may induce each to "interline" shipments with the other without voiding its competitor's bills of lading, and be a better guarantee of this practice being discontinued, and of both giving better and more efficient service, than any promise made by any witness at the hearing before the Commission.

The evidence introduced before the Commission with reference to the freight and railway express service that is available in the area to be served by Magic under its new certificate establishes no error in the order appealed from. While the evidence introduced by Railway Express, Inc.,

and the bus and freight companies, as well as Mistletoe, tends to show that the existing service between Oklahoma City and Tulsa, or Oklahoma City and Miami, and some other points in northern and eastern Oklahoma is adequate, such evidence does not meet the entire issue involved at the hearing. That issue, as framed by Magic's application and much of its evidence, was whether or not the many smaller towns and cities already served exclusively by Magic, and others it sought authority to serve, have adequate service to and from Oklahoma City and points south and west, and from and to other points in northeastern Oklahoma. Many of these towns, as far as the evidence shows, are served by neither railroad or truck line. Had the issue been confined to service between Oklahoma City and Tulsa, and other cities and towns now having such freight service, then it might be appropriate to undertake a determination as to whether the showing of public need among individuals and small businesses for the "light" express service offered by Magic and Mistletoe, at a cheaper rate, on shipments weighing less than 100 pounds, could be said to offset, justify or outweigh other carriers' evidence that they will lose needed revenue from so-called "minimum shipments" by the additional express service Magic sought, and was granted, authority to furnish. But here the issue is broader than that and concerns shipping service to and from Oklahoma City and many towns in northeastern Oklahoma, and between those towns themselves which, as far as the evidence reveals, have no shipping service whatsoever except that furnished, or to be furnished, by Magic. The record is replete with evidence showing adequate freight service between Oklahoma City and Tulsa and between said cities and others like Miami on main highways like U. S. Highway No. 66, but none of the freight lines' and railway express company's evidence reveals how a shipment that goes by railroad or truck line from Oklahoma City to Claremore, for instance, is to be transported by freight from the latter city to Jay, Oklahoma, or how a shipment by freight from Oklahoma City to Keota may arrive in the latter town, or how a freight shipment from Tulsa to Wynona or from Oklahoma City to Wetumka or Weleetka, would arrive at its destination. The record reveals that by the order appealed from and another one referred to therein, Magic is prohibited from charging any less for shipments of 100 pounds or more, than the freight lines. With this protection against so-called "ruinous" competition from Magic, and upon consideration of the many towns and cities and the great segment of the public, that Magic can serve under the order, and that none of the other carriers evidenced any intention, or desire, of serving, we cannot concur in appellants' unsupported charges concerning the invalidity of said Order No. 31939.

■ Under Art. 9, sec. 20, of the Oklahoma Constitution as amended by Senate Bill 61, S.L.1941, p. 544, on appeal from an order made by the Corporation Commission, this court is required to review the evidence, and must sustain the order appealed from if it is supported by substantial evidence.

"Under constitutional provision requiring Supreme Court to determine whether findings and conclusions of Corporation Commission are sustained by substantial evidence, the term 'substantial evidence' means something more than a 'scintilla of evidence' and means evidence that possesses something of substance and of relevant consequence such as carries with it fitness to induce conviction, and is such evidence that reasonable men may fairly differ whether it establishes a case." Yellow Transit Co. v. State, 198 Okl. 229, 178 P.2d 83, 84.

This is also true under Art. 9, sec. 22 of said Constitution. Chicago, R. I. & P. Ry. Co. v. State, Okl., 281 P.2d 172. In Bryan v. State ex rel. Shefts Supply Co., 133 Okl. 213, 271 P. 1020, it was held:

"Under section 22, art. 9, of the Constitution, all orders made by the Corporation Commission are presumed

to be reasonable until the contrary is made to appear. This presumption in favor of the reasonableness of orders made by the Corporation Commission was created by the Constitution of the state for a definite purpose, and cannot be disregarded by this court unless the contrary is made to appear."

The Commission found in its Report and Statement in Compliance with said Art. 9, sec. 22:

"* * * Pursuant to hearing, the Commission found generally that public convenience and necessity require the service proposed by applicant and that it was fit, willing and able to perform same, and a certificate of public convenience and necessity was issued to applicant authorizing such service.

"The Commission takes judicial notice of its records and has knowledge of the fact that many of the points and places, cities and towns, involved in this application have not heretofore enjoyed express service as sought by the application, and determines, therefore, the public interest will be better served by the issuance of this authority.

"The foregoing evidence adduced by the applicant, both oral and documentary, incorporated in and made a part of the Case-Made in this proceeding, constitutes the Commission's reason for the making and entering of Order No. 31939 issuing Certificate No. A-812."

As this finding and the order based thereon, cannot be said to be without "substantial evidence" reasonably tending to support them, said order must be sustained.

WELCH, C. J., CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS and JACKSON, JJ., concur.

CARLILE, J., dissents.

CARLILE, Justice (dissenting).

I am unable to concur in the opinion rendered herein. It sustains an order of the Corporation Commission granting a certificate to the Magic Empire Express of Tulsa, authorizing it to operate a Class A motor carrier express service from, to and between some 130 cities and towns, and over certain routes and highways. The certificate supersedes a previous one held by the company and increases to a considerable extent the territory over which the company may operate. Oklahoma City, Edmond, Poteau, and many other towns are among those which the order authorizes the company to include in its service, and which it did not previously serve.

The Corporation Commission is empowered by Title 47, § 166, O.S.1951 to issue or deny certificates to motor carriers as in its judgment, the public convenience and necessity may require.

"Under the provisions of the Constitution, this court on appeal from an order of the Corporation Commission, is required to review the evidence for the purpose of determining whether the order appealed from it supported by substantial evidence, and when there is such evidence reasonably tending to support the order of the Commission, such order must be sustained; and, conversely, if the order is not so sustained, the Commission's order will be reversed." Kansas, Oklahoma & Gulf Railway Co. v. State, Okl., 275 P.2d 274, 275.

I am of the opinion that the order appealed from is not supported by substantial evidence and, therefore, should be reversed. I deem it unnecessary to point out or analyze in detail wherein the evidence is insufficient, but shall refer to the same as a whole. Much of the testimony produced by the company in support of its application shows that the witnesses were testifying about his or her company's need or desire for additional service without relation or application to the needs or convenience of the general public. In several instances the witnesses were not informed as to the transportation schedules and facilities available to their needs, as furnished by the several companies, most of which are classed as express carriers, such

as bus lines, motor truck, railway express agency, and railroads.

The order results in a duplication of service to several points, without any apparent increase in service or benefits to the public.

"In Chicago, R. I. & P. Ry. Co. v. State, 126 Okl. 48, 258 P. 874, wherein this Court had under consideration the first motor carrier statute said: 'By the act it is not intended to promote competition between and among common carriers, but, on the other hand, it is intended that common carriers, railroads and motor carriers alike, should receive a fair measure of protection against ruinous competition, with a view that the public may be better served. It has never been the policy of Legislatures to enact legislation for the benefit of individuals or classes of individuals, except so far as the same would directly affect the public interest. In attempting to define or limit the term "necessity", as used in the act, we must deal with something to which the public is entitled.'"

With the exception of some smaller cities or towns, the evidence shows that adequate express service is available to the public. As to those points not adequately served, service may be had by minor changes in existing routes without a blanket order effecting a radical and unwarranted change in routes over a large territory.

The opinion refers to a policy followed by the applicant, Magic Empire Express, as well as its chief competitor, Mistletoe Express, whereby the entire charge on a shipment is retained by the delivering carrier, although picked up and carried part way by another, when it originates at a point served by both carriers but delivery is made at a point served only by one carrier. Such situation should be remedied by an order directing a proper division of the carrying charge, and not by granting an additional permit.

The first syllabus of the opinion apparently holds that the situation or conditions

therein stated with respect to the carriers was competent evidence to support the order of the Commission. Such holding, as I view it, is unwarranted. The express service rendered by the respective carriers designated as "A" and "B" along and over U. S. Highway 66 and Turner Turnpike is not evidence of the necessity for additional routes or service over other territory, and the syllabus is erroneous in so holding or indicating.

I consider the evidence insufficient to sustain the order of the Commission and, therefore, respectfully dissent.