**GREYHOUND LINES, INC.,**
Plaintiff in Error,

v.

**CORPORATION COMMISSION of the State
of Oklahoma, Defendant in Error.**
No. 41902.

Supreme Court of Oklahoma.
March 28, 1967.
As Corrected July 10, 1967.
Rehearing Denied July 11, 1967.

Lambert, Roberts & Lewis, by Vernon Roberts, Frank H. Jaques, Ada, Robert J. Bernard, Greyhound Lines, Inc., Chicago, Ill., for plaintiff in error.

Robert A. Huffman, John L. Arrington, Jr., Lupardus, Holliman & Huffman, Tulsa, for Missouri, Kansas and Oklahoma Coach Lines.

William L. Anderson, Gen.Counsel, Robert L. Mills, Asst. Gen. Counsel, Corporation Commission of Oklahoma, for defendant in error.

BLACKBIRD, Justice.

This appeal involves a controversy between two competing bus line companies: plaintiff in error, hereinafter referred to as "Greyhound", and Missouri, Kansas & Oklahoma Coach Lines, hereinafter referred to merely as "MK&O".

For many years, both carriers have operated passenger buses on parallel routes between Oklahoma City and St. Louis, over the Turner Turnpike, through Tulsa and on to, and through Joplin and Springfield, over other highways and/or turnpikes. They both possess Certificates Of Public Convenience and Necessity issued by Oklahoma's Corporation Commission authorizing these operations in this State. Both carriers use the same bus depots, or terminals, along their routes. The terminal at Tulsa is owned by the Tulsa Union Terminal Company, which latter corporation is owned and controlled by MK&O. Greyhound exercises proprietorship rights over those (often referred to as "Greyhound Terminals") in the other named cities, except the one at Oklahoma City, in which several companies have an interest.

Beginning in 1939, after an agreement between them, MK&O and Greyhound inaugurated a practice referred to as the "optional honoring" of bus tickets. Optional

honoring is described in the order appealed from herein as:

"* * * an arrangement whereby a passenger holding a ticket from one of the carriers involved in such an arrangement may use such ticket for transportation by the other carrier, without the necessity of securing the issuance of a new ticket or securing permission of either carrier. It is entirely up to the passenger. For example a passenger in Oklahoma City may purchase a round trip to Miami, Oklahoma, and ride up on one carrier and come back via another carrier, if he so chooses. This results in giving the riding public a wider choice as to schedules and service without the necessity of getting approval on the transfer and securing .the reissuance of validation on the transfer or securing the reissuance of validation of the ticket when he chooses to change carriers."

Also, under the described arrangement, if a traveler purchases a ticket from some other carrier to be transported, over either Greyhound, or MK&O Lines, to an Oklahoma destination point, at which their buses stop between St. Louis and Oklahoma City, the ticket is honored on any bus of either of these two carriers, on which the traveler chooses to ride.

In 1959, to facilitate the operation of the above described arrangement, the two bus lines involved herein, inaugurated the use of a printed form, referred to as a "sticker coupon", in connection with tickets to be optionally honored. These forms have two parts, or halves, marked by a perforated line. When a passenger, in order to ride a bus on one of these lines, presents a ticket issued for transportation by the other line, the bus driver tears the form, or coupon, along the perforated line, and sticks half of it on the back of the passenger's ticket, retains the other half in his ticket envelope, and later turns it in to his employer company, for its use in claiming and obtaining remuneration by the other company for that part of his journey, on which the traveler rode the carrying company's bus. This is referred to as the "HONORED BUT NOT LIFTED" type of ticket.

It may be inferred from the evidence and the order appealed from that the above described optional honoring was incorporated impliedly, if not expressly, in every tariff, or rate schedule, these two bus lines have had filed with, and approved by, this State's Corporation Commission since that practice was begun in 1959.

For one or more reasons we do not consider controlling on the only real issues involved herein, Greyhound decided to try to terminate the above described type of optional honoring, and, in accord with said decision, instructed the National Bus Traffic Association, Inc., to initiate this change, as evidenced by the following letter, dated June 17, 1965, to said Association's Mr. Ristow, from Mr. Bart Cook, Greyhound's Director of Traffic:

"This will confirm our telephone conversation today wherein I requested you to issue revised pages to National Passenger Tariff No. A–1000 and Missouri Joint Passenger Tariff No. A–67–E cancelling the Optional Honoring of Ticket arrangements between MK&O Coach Lines and Greyhound Lines between St. Louis, Missouri, and Oklahoma City, Oklahoma and all intermediate points. "The two pages in the two tariffs *are to be* reissued and *filed with the regulatory bodies concerned* at the earliest possible date and the expense for the special revisions to be borne by Central Greyhound Lines.

"Please advise when the pages are filed and let us have a copy of *letters of transmittal to* the Interstate Commerce Commission, the Missouri Public Service Commission and the *Oklahoma Corporation Commission*." (Emphasis added).

A few days later, on June 24th, the National Bus Traffic Association, Inc., in following the above directions forwarded to Oklahoma's Corporation Commission (hereinafter referred to merely as the "Commission") copies of the above mentioned revised pages of the "Tariff" involved, with

a letter of transmittal, stating, among other things, as follows:

"*In compliance with the provisions of the Rules and Regulations of your Commission,* we show below the changes, affecting Oklahoma intrastate Traffic, which result from these Revised Pages:

"(a) It is proposed to eliminate by Nineteenth Revised Page E6–9 the Optional Honoring of Ticket Arrangement between St. Louis, Missouri, and Oklahoma City, Okla., *and all intermediate common points,* from the Tariff at the request of the Greyhound Lines (Central Greyhound Line Division).

"*We trust that these Revised Pages,* and the reason for the proposed change *meets with the approval of your Commission.*" (Emphasis added).

The next day, June 25, 1965, MK&O instituted the present proceedings before this State's Corporation Commission as its Cause No. 23378, captioned: "PROTEST BY MISSOURI, KANSAS AND OKLAHOMA COACH LINES OF CENTRAL GREYHOUND LINES TERMINATION OF OPTIONAL HONORING OF TICKETS ARRANGEMENT, AND REQUEST FOR ORDER DIRECTING MAINTENANCE OF ARRANGEMENT PENDING HEARING." In the pleading entitled "Protest And Request" it then filed in these proceedings, MK&O referred to the number of years that optional honoring had been in effect between it and Greyhound, allowing passengers holding tickets of one of these carriers to use the schedule of the other, without being required to obtain a new ticket. It further alleged, among other things:

"3. This has been a great convenience to the Oklahoma traveling public, since it permits traveler to make last minute changes in plans, stop over, delay departures, catch the next bus after arriving late for the intended departures, etc., with a minimum of trouble. It has resulted in the most beneficial form of competition between the two carriers, by which the prospective passengers are given an absolute freedom of choice of schedules and equipment, without consideration of the extraneous factor of the inconvenience (or impossibility, if late at night in smaller communities) of being forced to exchange or buy a new ticket."

The concluding paragraph of this pleading was as follows:

"WHEREFORE, MK&O protests the proposed termination by Greyhound as of August 1, 1965, of the Optional Honoring of Tickets arrangement presently existing between MK&O and Greyhound on the Oklahoma City to the Oklahoma-Missouri border route to St. Louis, Missouri, request that the Commission issue an order directing the continuation of such arrangement in intrastate commerce in Oklahoma pending a hearing thereon, and that after hearing, the Commission order the arrangement to be continued."

Thereafter, subsequent to the scheduling of a hearing on the matter, and postponement of said hearing, Greyhound, in October, 1965, filed a motion to dismiss MK&O's Protest And Request, on the alleged ground of the Corporation Commission's lack of jurisdiction. When the matter finally came on for hearing before the Commission during the same month, it overruled Greyhound's Motion To Dismiss, and proceeded to hear the case on its merits. After considering the evidence introduced, including witnesses for both sides of the controversy, the Commission entered its order in January, 1966. Said order recited, among other things, the following:

"* * *

"*Were this arrangement* ("Honored But Not Lifted" tickets) *eliminated, either carrier could legally refuse to allow a holder of a ticket issued by the other, to ride its bus, and in* any event would require that the ticket be validated or transportation authorized by an appropriate agent before the passsenger could board the bus. To say that this would not result in inconvenience to the passenger, to us is silly. For example, a mother

with a number of small children going from Oklahoma City to Tulsa can buy round trip tickets and ride up on either MK&O or Greyhound, whichever has the most convenient schedule, or is less crowded, and exercise the same option in returning by merely giving the driver the ticket when she gets on the bus. With the proposed change, if she chose a different bus than the one whose company issued the ticket, she would have to go to the ticket counter with her children and get the ticket changed, often in crowded periods, having to wait in line, and be faced with the possibility that either carrier could legally refuse to honor such transfer. We realize that Greyhound says that it will honor all such requests, but there is nothing in the tariff that so obligates it and it could change its company policies at any time.

\* \* \* \* \* \*

"Greyhound, as justification for eliminating 'sticker coupons', said that it was possible for an MK&O driver to show transportation for a greater distance that MK&O actually transported the passengers, and therefore defraud Greyhound out of revenue. Greyhound witnesses admitted there was no evidence that such thing had happened and admitted that they had full access to books and records of MK&O, and could make spot checks with the 'sticker coupons' and the handling of them.

"\* \* \* In this case, the Commission is of the opinion that not only has *Greyhound failed to meet the burden of proof* necessary to sustain this departure, but, *on the other hand the evidence clearly establishes that the public convenience and necessity required the continuation of both optional ticket honoring and the use of 'sticker coupons'* that has been established for so long between the carriers.

"In conclusion, the Commission is of the opinion that the overall controlling factor in matters such as these is in the interest of the customer that might use the services of either carrier. And where a practice has been established, accepted by both companies and the traveling public for a quarter of a century, it should not be lightly set aside, and especially where it is such a practice as obviously benefits a large section of the public, such as the aged, infirmed, and mothers of small children. \* \* \*." (Emphasis added).

In the decretal part of its order, the Commission determined, among other things:

"2. That nineteenth Revised Page E6–9 of National Bus Traffic Association, Inc., Agent, National Passenger Tariff No. A–1000, Oklahoma Corporation Commission No. 29, proposed to become effective August 1, 1965, is hereby disapproved and declared to be without effect in Oklahoma intrastate commerce.

"3. That Greyhound Lines Inc. and Missouri, Kansas and Oklahoma Coach Lines are hereby ordered to continue in full force and effect in Oklahoma intrastate commerce the optional honoring of tickets arrangement between such companies as such arrangement existed on July 1, 1965.

"4. That Greyhound Lines, Inc. and Missouri, Kansas and Oklahoma Coach Lines are hereby ordered to continue to use 'sticker coupons' in the same manner as prior to September 1, 1965, to permit Missouri, Kansas and Oklahoma Coach Lines to honor beyond-line Greyhound Lines, Inc., ticket coupons in Oklahoma intra-state commerce without reissuance of such tickets, except that Greyhound Lines, Inc. may request this Commission's permission to adopt an equivalent procedure permitting Missouri, Kansas and Oklahoma Coach Lines to honor such tickets without reissuance. \* \* \*."

For reversal of the order appealed from, Greyhound urges four propositions, but, since the first three of these all have the first one as their assumed premise, we will consider these three together. That first proposition is that the Commission "does not have jurisdiction over optional honoring of tickets or sticker coupons." A basic

theme extending all through Greyhound's arguments is that optional honoring and the use of sticker coupons originated as a matter of private agreement between the two carriers, and that, if such agreement is to be enforced, or continued in effect, MK&O must look to the courts, rather than to the Commission, for its remedy, as in the instance of other private contract rights. While conceding that the Commission "has both constitutional and statutory authority to regulate motor carriers with regard to their public duties", Greyhound argues that, in regard to the subject arrangement, the public is no more than a third party beneficiary of a private contract between two carriers and that the fact that this third party beneficiary may be incidentally benefited by the continuance of the contract, gives it no valid ground on which to enforce it.

Despite the admission, by the Commission's attorney, at the hearing, and in the Commission's brief, that the Commission has promulgated no rule or regulation which specifically covers the handling of tickets between carriers such as the one around which this controversy revolves, both the Commission and MK&O contend that the Commission's constitutional and statutory jurisdiction over motor carriers under Art. 9, Section 18, of the Oklahoma Constitution, and Tit. 47 O.S.1961, § 162, provides that Body with ample authority to prevent termination of this long-standing arrangement.

■ We have no doubt that the fact that the present system of optional honoring in effect between Greyhound and MK&O carries out the terms of a contract, or agreement, made between them privately, and on their own initiative, has no controlling significance upon the question of the Commission's jurisdiction. See Motor Transit Co. v. Railroad Commission, 189 Cal. 573, 209 P. 586. If the Commission has jurisdiction over the practice, it would make no difference that same was originally "based entirely upon agreement by the companies participating." Valley Public Service

Company v. Public Utilities Commission, 144 Ohio St. 352, 362, 59 N.E.2d 40, 44.

Article 9, Section 18 of the Oklahoma Constitution, in authorizing the legislature to create the Corporation Commission, provided that the latter would have the jurisdiction to supervise, regulate and control " * * * all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor * * * and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, * * *."

Title 47 O.S.1961, § 162, extending the control of the Commission to bus companies, provides, in part, that the Commission should have the jurisdiction " * * * to supervise and regulate every motor carrier doing an inter-city business * * * to fix or approve * * * rates, fares, charges, classifications and rules and regulations pertaining thereto, of each motor carrier; to regulate and supervise the * * schedules, service * * * of each such motor carrier * * * and to supervise and regulate motor carriers in all other matters affecting the relationship between such carriers and the traveling * * * public. * * *"

The question of whether the Commission in fact had jurisdiction of the subject matter is answered by considering whether the optional honoring of tickets arrangement was a matter of *purely* private concern between two competing bus companies (as contended by Greyhound), or did the agreement (as found by the Commission) concern the maintenance of a service to the traveling public which affected the convenience of such members of the public.

In considering whether the Commission had jurisdiction of the ticket arrangement

we are concerned only with whether the Commission had the authority to *make* the order. We are of the opinion that the rights of the public were involved to a sufficient extent to authorize the action of the Commission. It would indeed be difficult to visualize a more convenient service to a traveler than to be able to buy one ticket and travel on any bus of two bus companies traveling the same route.

The situation is comparable to that in St. Louis & S. F. R. Co. v. Travelers' Corporation of Oklahoma, 47 Okl. 374, 148 P. 166, where the carrier was ordered to allow passengers to board the train without first displaying their tickets, and the case of St. Louis-San Francisco Ry. Co. v. State et al., 115 Okl. 152, 242 P. 248, where the carrier was required to furnish and maintain a station agent at a small Oklahoma town. Both of the cited cases are authority for holding that the Commission has jurisdiction of matters connected with the service of carriers to the traveling public, where the convenience of the public is involved. Of course, all of such regulations and orders must be reasonable and just to the carrier involved.

■■ Under its "Proposition II", Greyhound refers to the order appealed from as abrogating its right to terminate contracts, which it says is guaranteed by the Fourteenth Amendment to the U. S. Constitution, and Art. II, Section 7 of the Oklahoma Constitution. This argument is untenable in view of the fact that the Commission's power to regulate carriers is an exercise of the State's police power, which power, if not exercised in an arbitrary and capricious, or unconstitutional, manner, may extend to the restriction, or abrogation, of contract rights. As said in 16 Am.Jur.2d, "Constitutional Law", sec. 298:

" * * *

" * * * the principle is frequently stated that all contracts are made subject to the paramount authority of the state to safeguard the vital interests of its people, and all contracts made with

reference to *any matter that is subject to regulation under the police power* must be understood as made in reference to the possible exercise of that power. * * *." (Emphasis added).

In Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475, it was said:

"All property is held subject to the valid exercise of the police power; nor are regulations unconstitutional merely because they operate as a restraint upon private rights of persons or property or will result in loss to individuals. The infliction of such loss is not a deprivation of property without due process of law; the exertion of the police power upon subjects lying within its scope, in a proper and lawful manner, is due process of law."

When they are common carriers, bus companies, like railroads, are subject to the State's police power. In this connection notice Chicago, R. I. & P. Ry. Co. v. State, 67 Okl. 10, 168 P. 239, 241, L.R.A.1918C, 492, 495, and other cases cited in the footnotes to 16 Am.Jur.2d, sec. 298, supra, and the discussion in Ex Parte Tindall, 102 Okl. 192, 229 P. 125.

■ Under its Proposition III, Greyhound, still contending, in substance, that the Commission has no jurisdiction over optional honoring, or sticker coupons, asserts that therefore it erred in requiring said carrier to assume the burden of providing that the subject practice should be discontinued. Under its Proposition IV, Greyhound argues that, notwithstanding this, it "nonetheless met this burden of proof and proved that their termination of optional honoring and the discontinuance of sticker coupons was reasonable and to the best interest of the Oklahoma intrastate traveling public."

In its reply brief, Greyhound states, in substance, that the Commission, in the order appealed from, stated that it "was not entered because Greyhound failed in the burden of proof * * *". This statement evidently refers to the hereinbefore quoted part of the order in which the Commission

stated, inter alia, that "* * * the evidence clearly establishes that the public convenience · and necessity required the continuation of both optional ticket honoring and the use of 'sticker coupons' * * *".

Since the evidence introduced on behalf of Greyhound · and relied upon under its Proposition IV to discharge its burden of proof—upon the hypothesis that it had such a burden—relates to an activity referred to as "hustling passengers" and to the ."confusion" and inconvenience to passengers that witnesses for Greyhound testified have resulted from this and other competitive activities (characterized as unfair and said to have been engaged in at the Tulsa Terminal) does not establish such activity as a necessary ingredient, or accompaniment, of the "Honored But Not Lifted" system of optional honoring, especially in view of the previous years that said system operated with apparent satisfaction to all concerned, there is no evidence directly contradicting that given by MK&O witnesses to the effect that this system is a distinct convenience to the traveling public, and especially to those travelers whose trips originate, or terminate, at points in northeastern Oklahoma served exclusively by MK&O Lines, or carriers other than Greyhound. The evidence reveals no reason why the "Honored But Not Lifted" system of optional honoring cannot again attain its former role as an unqualified instrument of public service, if administered, as fairly and honorably as it apparently was for several years after it was inaugurated.

The lack of any serious or substantial conflict in the evidence as to the public necessity and convenience of the system itself, or as it has been, and can again operate, renders weighing the evidence, or determining which of the parties had the burden of proof at the hearing before the Commission, both inappropriate and unnecessary. Nor, in view of this virtual lack of conflict in the evidence on the subject of public convenience and necessity do we need to consider the prima facie

presumption which ordinarily accompanies to this court on appeal, orders of the commission concerning matters over which it has jurisdiction. In this connection notice Missouri, Kansas & Oklahoma Coach Lines v. State, 183 Okl. 278, 81 P.2d 660.

■ Much of Greyhound's argument inferring that the Commission's order deprives it of property without due process of law seems to be based upon the theory that it has an exclusive property right to transport, on to Oklahoma City, any passenger bound for that City, that it has transported to Tulsa from other points between there and St. Louis. This is a false assumption, as long as both carriers have their present Certificates Of Public Convenience And Necessity for the transportation of passengers between the Missouri-Oklahoma border and Oklahoma City. In this situation, neither of the two carriers may claim an exclusive right to those passengers for that part of their journeys; and the matter of which of these carriers' buses such passengers will ride between Tulsa and Oklahoma City should be, under the "Honored But Not Lifted" arrangement, a matter of purely personal choice with the individual passenger. Greyhound witnesses testified to the effect that discontinuance of the "Honored But Not Lifted" system would not affect this personal choice, but in its order the Commission found (as hereinbefore quoted) : "Were this arrangement eliminated either carrier could legally refuse to allow a holder of a ticket issued by the other, to ride its bus, * * *". With reference to this matter, we are inclined to a view similar to that we expressed in Mistletoe Express Serv. v. Corporation Commission, Okl., 316 P.2d 865, 868, in substance that the Commission's order is a "better guarantee" against an undesirable practice between the two carriers " * * * than any promise made by any witness at the hearing * * *".

Though we have not attempted to detail all of the arguments advanced for reversal of the order appealed from, we have considered them thoroughly, in so far as they

apply to the record in this case, and have found in them no meritorious ground for reversing the order appealed from. Said order is therefore affirmed.

All the Justices concur.